IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WENDI JO THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-265-RAW-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Wendi Jo Thomas requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 38, 211). She completed high school and earned certificates as a CNA and CMA, and has previously worked as a short order cook, cashier II, shelter monitor, and nurse assistant (Tr. 27, 283). The claimant alleges that she has been unable to work since November 1, 2016, due to diabetes, brain stem stroke, depression, high blood pressure, and anxiety (Tr. 282).

### Procedural History

On August 9, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 20, 2019 (Tr. 15-29). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) & 404.967(b), except she could only occasionally climb stairs/ramps; only frequently balance, stoop, kneel, crouch, crawl, and handle/finger bilaterally; and never climb ladders, ropes, scaffolds. Additionally, he found she must alternate sitting and standing every twenty to thirty minutes throughout the workday in order to change position for a brief position change of less than five minutes but without leaving the workstation (Tr. 20). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work in the economy that she could perform, *e. g.*, marker, order caller, and mail clerk (Tr. 27-28).

### Review

The claimant contends that the ALJ erred by: (i) improperly citing information not belonging to the claimant; (ii) improperly evaluating the evidence at steps two and three, including failing to account for all her impairments at step four; and (iii) failing to properly identify jobs at step five. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of dysfunction of major joints and spine disorders, as well as the nonsevere impairments[3] of history of substance

---

[3] The ALJ inexplicably indicated the claimant's nonsevere impairments at step three (Tr. 18), rather than step two, but this did not affect his analysis at step four.

abuse; depressive, bipolar, and related disorders; diabetes mellitus; essential hypertension; and anxiety and obsessive-compulsive disorders (Tr. 18). The distant relevant medical evidence reflects that the claimant had a brain stem stroke in 2008 (Tr. 504).

The claimant received treatment at Carl Albert Mental Health Center from September 20, 2016 through July 20, 2017, at which time she was discharged for noncompliance after she had not appeared since December 2016 (Tr. 380). Her final diagnoses included major depressive disorder, recurrent episode with anxious distress (Tr. 381, 390).

On October 8, 2018, Dr. Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 497-500). She noted difficulty getting a proper history because the claimant changed her statements regarding whether she was taking medication, noting that the circumstances regarding lack of insurance created barriers to treatment and had been in place for years. She assessed the claimant with unspecified anxiety disorder and methamphetamine use disorder by history in reported sustained remission (Tr. 500). Dr. Ward recommended she try community mental health resources (Tr. 500).

On October 19, 2018, Dr. Harold DeLaughter, D.O., conducted a physical examination of the claimant (Tr. 504-509). He noted she had great toe strength weak on the right compared to the left (4/5), normal range of motion and manipulation of objects, heel walking weak on the right, and that she ambulated with a stable gait at a decreased speed and without an assistive device (Tr. 505, 509). He assessed her with, *inter alia*, diabetes mellitus type 2, history of brain stem CVA, depression, hypertension, anxiety, and right hemiparesis affecting the right lower leg (Tr. 505).

In March 2019, the claimant began receiving treatment for an abscess/sore on the big toe of her right foot (Tr. 528). She was assessed with a diabetic foot ulcer and treated on an outpatient basis (Tr. 533-534, 539). In April 2019, the claimant again reported pain in the big toe of the right foot, but no redness or swelling and it was noninfected and nontender with direct palpation (Tr. 559-561). She had an antalgic gait but was within normal limits other than dorsiflexion (Tr. 562). She was assessed with diabetic neuropathy, pes cavus foot type, hammertoe deformity right forefoot, onychomytosis, and mild functional ankle equinus right lower extremity (Tr. 563). She was prescribed custom orthotics and diabetic shoes in May 2019 (Tr. 567). In May 2019, the claimant also reported left hand/wrist pain, and an x-ray revealed severe degenerative change of the first carpal-metacarpal joint (Tr. 547-550, 553). In September 2019, the claimant again reported a wound in the big toe of the right foot that she had noticed three weeks prior and which made walking difficult (Tr. 575). At that time, her ambulation was within normal limits (Tr. 576). She was given the same diagnoses as in April 2019 (Tr. 579).

On October 21, 2019, the claimant presented for a new patient visit with Ruth Fereday (Tr. 581-582). At the time, she had normal range of motion and a normal, smooth gait and good base of support despite swelling of the right foot including a stage II chronic ulcer on the right great toe (Tr. 582).

State physicians determined initially and upon review that the claimant could perform the full range of light work, with no additional limitations (Tr. 88-89, 116-117). State reviewing physicians further determined that the claimant's mental impairments of

anxiety and depressive, bipolar and related disorders were medically determinable, but that they caused only mild limitations of functioning (Tr. 85-87, 113-115).

In his written decision at step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as nearly every medical record available reflecting both physical and mental impairments. As relevant to this appeal, the ALJ noted her outpatient mental health treatment with Carl Albert Mental Health Center, including her discharge for noncompliance and diagnoses including major depressive disorder, recurrent episode with anxious distress (Tr. 21-22). He specifically noted Dr. DeLaughter's findings regarding deep tendon reflexes being 2/4 bilaterally, and great toe strength weak on the right compared to the left, as well as that her heel/toe walking was weak on the right and that she ambulated with a stable gait but at a decreased speed (Tr. 23-25). The ALJ recounted the claimant's treatment history for her big toe pain, including the prescription for diabetic shotes and inserts, and further noted her hand pain and the subsequent x-rays revealing severe degenerative change and likely carpal tunnel (Tr. 24-25). His recitation of the treatment notes then included her new patient appointment with Physician Assistant Fereday, where she had a smooth gait with equal stride and good base of support despite swelling and mild erythema of the right foot and stage III (which was actually stage II) chronic ulcer of the right great toe (Tr. 25). He then found the state reviewing physician opinions only partially persuasive as to her physical impairments because they did not account for the chronic lesion of the right foot and antalgic gait at times, but also found them consistent with some findings of normal gait (both before and after the lesion). Additionally, he noted that these opinions were issued prior to the evidence regarding

severe degenerative change of the left wrist and first carpal metacarpal joint (Tr. 26). As to her mental impairments, the ALJ found the state physician opinions persuasive and consistent with a lack of treatment after December 2016 and incidental mental health findings during subsequent examinations were unremarkable (Tr. 26). He then found the consultative examination findings as to her mental impairments partially persuasive for the same reasons (Tr. 26-27). He ultimately concluded that the claimant was not disabled (Tr. 28).

The claimant first contends that the ALJ erred in crediting a record not belonging to the claimant. The original administrative transcript included a record for a woman with a similar name and different date of birth, although it has now been removed from the administrative transcript before this Court (Tr. 403-409). In his written opinion, the ALJ cited this record to find that the claimant had a history of degeneration of the cervical spine (Tr. 21). It appears the ALJ used this record to support his finding that the claimant had the severe impairment of spine disorder (Tr. 18, 21). The claimant contends that the ALJ improperly considered this in violation of her due process rights. Due process violations are generally contemplated when an ALJ considers evidence *not* included in the record. *See, e. g., Grass v. Berryhill*, 2019 WL 1450595, at *8 (D. Colo. April 2, 2019). But here, the ALJ *credited* a record related to spine degeneration to the claimant, despite the fact that the record did not pertain to *this* claimant. Because the ALJ *credited* this record to the benefit of the claimant, the undersigned Magistrate Judge finds no prejudice, and therefore no violation of due process. *See Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014) ("A due process claim will not succeed, however, if the claimant fails to show prejudice."). *See*

*also Glass v. Shalala*, 43 F.3d 1392, 1396-1397 (requiring a showing of prejudice for due-process claim involving social-security proceedings). The undersigned Magistrate Judge further notes that, as discussed below, the ALJ properly considered *all* the evidence in the record in determining the claimant's comprehensive RFC, and ultimately the work she could perform.

The claimant next asserts that the ALJ erred by failing to consider her history of cerebrovascular accident with right hemiparesis, diabetic neuropathy, diabetic ulcer, abscesses, cellulitis, likely carpal tunnel, left hand osteoarthritis, and elbow spurs, noting that he did not find that these were even medically determinable, although she contends they were severe. She asserts that because the ALJ did not find them to be medically determinable, he failed to properly consider all of her impairments in combination. Assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant had a severe impairment of dysfunction of major joints (even if the impairment of spine disorder was ultimately not pertaining to the claimant), which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. The claimant contends that

the ALJ *did fail* to consider these impairments throughout the evaluation, but, as discussed below, the ALJ *did* consider them.

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her impairments.

In his written opinion, the ALJ specifically noted records discussing her history of brain stem cerebrovascular accident, as well as records related to her diabetic ulcer on her toe, and the severe degenerative changes related to her left hand. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a

'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). Contrary to the claimant's arguments, therefore, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect further limitations related to any of the claimant's medically determinable but nonsevere impairments, and the ALJ clearly considered them when he pointed to the evidence related to them, then assessed the opinion evidence in relation to this objective evidence. Likewise, the claimant has pointed to no medical documentation providing further limitations other than her own reports. Because she points to no evidence other than her own assertions, the undersigned Magistrate Judge declines to find an error here. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

Finally, the claimant asserts that the ALJ's failure to consider the additional limitations as discussed above resulted in an error in the identification of jobs she can perform at step five because the RFC contained no specific mental limitations. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform the above-listed RFC. The final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**